UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE LEINENWEBER

MAGISTRATE JUDGE VALDEZ

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | ) | Case No.14-CR-468 |
| | ) | |
| v. | ) | Violations: Title 18, United States |
| | ) | Code, Sections 371, 1512(c)(2), and |
| BEAU B. BRINDLEY and | ) | 1623(a) |
| MICHAEL THOMPSON,<br>Defendants. | ) | |
| | ) | **SUPERSEDING INDICTMENT** |

FILED

**COUNT ONE**

JAN 1 5 2015

The SPECIAL FEBRUARY 2014 GRAND JURY charges:

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1.     At all times material to this Superseding Indictment:

     a.     The Law Office of Beau B. Brindley and Associates was a law firm located in Chicago.   It was primarily in the business of representing individuals charged with violating federal and state criminal law.

     b.     Defendant BEAU B. BRINDLEY was an attorney who operated the Law Office of Beau B. Brindley and Associates.

     c.     Defendant MICHAEL THOMPSON was an attorney employed at the Law Office of Beau B. Brindley and Associates.

2.     From approximately September 2008, through June 2013, at Chicago, in the Northern District of Illinois, and elsewhere,

**BEAU B. BRINDLEY and
MICHAEL THOMPSON**

defendants herein, **and** others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to commit offenses against the United States, namely, (i) to make materially false declarations under oath before the United States District Court in the Northern

District of Illinois, in violation of Title 18, United States Code, Section 1623(a); and (ii) to obstruct, influence, and impede official proceedings, in violation of Title 18, United States Code, Section 1512(c)(2).

### *Relevant Legal Proceedings*

<u>*United States of America v. Alexander Vasquez*</u>

a.    On or about September 4, 2008, a federal grand jury in the Northern District of Illinois returned a two-count indictment charging Carlos Cruz, Joel Perez, and Alexander Vasquez with conspiring to and attempting to knowingly and intentionally possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846.    The case was assigned case number 08-CR-625.

b.    Carlos Cruz and Joel Perez pleaded guilty to the charge of conspiring to possess with intent to distribute a controlled substance.    The case against Alexander Vasquez commenced as a jury trial in the United States District Court for the Northern District of Illinois.

c.    Defendant BEAU B. BRINDLEY was Alexander Vasquez's attorney.

d.    Marina Collazo testified under oath in the trial of *United States of America v. Alexander Vasquez*, Case Number 08-CR-625.

e.    The following issues were material in the trial of *United States of America v. Alexander Vasquez*, Case Number 08-CR-625: (i) the reason why Alexander Vasquez drove a Pontiac Bonneville to Arlington Heights, Illinois on August 5, 2008; (ii) whether Marina Collazo had asked Alexander Vasquez to drive the Pontiac Bonneville to Arlington Heights and gave him the keys to the Bonneville; and (iii) whether Marina Collazo had been induced to testify falsely about those issues.

2

<u>United States of America v. Bennie Wilcox</u>

f.      On or about March 27, 2008, a federal grand jury in the Northern District of Illinois returned a six-count indictment charging Bennie Wilcox with sending interstate communications with the intent to annoy, abuse, harass, and threaten another person, in violation of Title 18, United States Code, Section 875(c), and Title 47, United States Code, Section 223(a)(1)(C).    The case was assigned case number 08-CR-256.

g.      Defendants BEAU B. BRINDLEY and MICHAEL THOMPSON were Bennie Wilcox's attorneys.

h.      The case against Bennie Wilcox commenced as a jury trial in the United States District Court for the Northern District of Illinois.

i.      On or about December 7, 2010, Karilyn Wilcox testified under oath in the trial of *United States of America v. Bennie Wilcox*, Case Number 08-CR-256.

j.      The following issues were material in the trial of *United States of America v. Bennie Wilcox*, Case Number 08-CR-256: (i) whether Bennie Wilcox had accessed email accounts belonging to J.H. from his office on June 6, 2007 and June 8, 2007; (ii) whether Karilyn Wilcox had disclosed the user name and password to Bennie Wilcox's email account to "Mary;" and (iii) Karilyn Wilcox's credibility.

<u>United States of America v. Richard Harrington</u>

k.      On or about June 23, 2010, a federal grand jury in the Northern District of Illinois returned a superseding indictment charging Richard Harrington with various crimes related to the distribution of heroin, in violation of Title 21, United States Code, Sections 841, 843, and 846; possession of a firearm in furtherance of a drug trafficking offense, in violation of Title 18, United States Code, Section 924(c); and money laundering, in violation of Title 18, United

States Code, Section 1956. The case was assigned case number 09-CR-814.

       l.     Defendants BEAU B. BRINDLEY and MICHAEL THOMPSON were Richard Harrington's attorneys.

       m.     On or about January 31, 2011, Richard Harrington pleaded guilty to conspiring to possess heroin with intent to distribute, distribution of heroin, and money laundering. The charge of possession of a firearm in furtherance of a drug trafficking offense commenced as a jury trial in the Northern District of Illinois.

       n.     On or about December 15, 2011, Richard Harrington testified under oath during his trial.

       o.     The following issues were material in the trial of *United States of America v. Richard Harrington*, Case Number 09-CR-814: (i) Richard Harrington's possession of a .40 caliber Smith and Wesson firearm; (ii) Richard Harrington's knowledge of the presence of a .40 caliber Smith and Wesson firearm in his vehicle on October 7, 2009; and (iii) whether Richard Harrington possessed the .40 caliber Smith and Wesson firearm in furtherance of his drug trafficking activities.

*United States of America v. Isaac Myles*

       p.     On or about April 7, 2011, a federal grand jury in the Northern District of Illinois returned a four-count superseding indictment charging Isaac Myles with unlawful possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1); possession with intent to distribute heroin, in violation of Title 21, United States Code, Section 841; and possession of a firearm in furtherance of a drug trafficking offense, in violation of Title 18, United States Code, Section 924(c)(1)(A). The case was assigned case number 10-CR-647.

       q.     Defendant BEAU B. BRINDLEY was Isaac Myles's attorney.

4

r.      The case against Isaac Myles commenced as a jury trial in the United States District Court for the Northern District of Illinois.

s.      On or about August 21, 2012, Isaac Myles testified under oath during his trial.

t.      The following issues were material in the trial of *United States of America v. Isaac Myles*, Case Number 10-CR-647: (i) when and why Isaac Myles purchased a .22 caliber RG industry revolver; and (ii) whether Isaac Myles possessed the .22 caliber RG industry revolver in furtherance of his drug trafficking activities.

*United States of America v. Rahshone Burnett*

u.      On or about March 17, 2010, a grand jury in the Northern District of Illinois returned a superseding indictment that charged Rahshone Burnett with conspiring to distribute one kilogram or more of heroin, in violation of Title 21, United States Code, Section 846; and possession with intent to distribute heroin, in violation of Title 21, United States Code, Section 841(a)(1), among other offenses.   The case was assigned case number 09-CR-1030.

v.      Defendant BEAU B. BRINDLEY and MICHAEL THOMPSON were Rahshone Burnett's attorneys.

w.      The case against Rahshone Burnett commenced as a jury trial in the United States District Court for the Northern District of Illinois.   Between February 4, 2013, and February 6, 2013, Richard Harrington testified under oath during Burnett's trial.

x.      The following issues were material in the trial of *United States of America v. Rahshone Burnett*, Case Number 09-CR-1030: (i) whether Richard Harrington and Rahshone Burnett pooled their money to buy heroin; and (ii) whether Rahshone Burnett always paid Richard Harrington for heroin before receiving it.

_United States of America v. David Conrad_

       y.     On or about February 5, 2010, in the United States District Court for the Northern District of Illinois, David Conrad was convicted of committing multiple federal crimes, in the case of _United States of America v. David Conrad_, Case Number 05-CR-931.

       z.     Defendants BEAU B. BRINDLEY and MICHAEL THOMPSON were David Conrad's attorneys.

       aa.     On or about April 5, 2010, the United States District Court revoked David Conrad's bond, and Conrad was imprisoned at the Metropolitan Correctional Center in Chicago. Defendant BEAU B. BRINDLEY was attempting to keep Conrad released until his sentencing.

       bb.     On April 7, 2010, BEAU B. BRINDLEY met with David Conrad at the Metropolitan Correctional Center in Chicago. On April 7, 2010, BEAU B. BRINDLEY and MICHAEL THOMPSON prepared and filed a "Status Report" with the United States District Court for the Northern District of Illinois. In the Status Report, BRINDLEY and THOMPSON stated the following with respect to Conrad's physical condition during the meeting between BRINDLEY and Conrad: "The meeting was rendered very difficult by Mr. Conrad's extreme illness. Mr. Conrad was sweating profusely during the meeting. His hands shook violently . . . . The meeting was twice interrupted by Mr. Conrad leaving the room to vomit."

_In RE_: A Witness Before the Special September 2012 Grand Jury

       cc.     On or about July 31, 2012, a federal grand jury in the Northern District of Illinois returned a fifteen-count indictment charging David Price with drug trafficking, money laundering, and unlawful possession of a firearm. The case was assigned case number 12-CR-587.

       dd.     Defendants BEAU B. BRINDLEY and MICHAEL THOMPSON were

attorneys representing David Price.

ee.    In or around October 2012, the United States Department of Justice and a federal grand jury in the Northern District of Illinois were investigating a murder and other violations of federal law.   David Price was a subject of the grand jury investigation.

ff.    On or about October 16, 2012, Individual A was subpoenaed to testify before the Special September 2012 grand jury convened in the Northern District of Illinois. The grand jury subpoena required Individual A to appear and give testimony before the grand jury on October 23, 2012.

**Manner and Means of the Conspiracy**

3.    The manner and means by which defendants sought to accomplish the objects and purpose of the conspiracy included:

a.    Witnesses were recruited to testify falsely in criminal trials in the Northern District of Illinois.

b.    Witnesses were induced to testify falsely in criminal trials in the Northern District of Illinois.

c.    False testimony was prepared for witnesses.

d.    Witnesses were directed to rehearse and memorize the false testimony.

e.    The false testimony was presented during criminal trials in the Northern District of Illinois.

f.    False representations were made and caused to be made to the United States District Court for the Northern District of Illinois and to the United States Attorney's Office for the Northern District of Illinois.

g.    Acts done in furtherance of the conspiracy were concealed and hidden, and caused to be concealed and hidden.

## Overt Acts in Furtherance of the Conspiracy

4.    In furtherance of the conspiracy, and to accomplish its objects and purpose the defendants committed and caused to be committed the following overt acts, among others:

*United States of America v. Alexander Vasquez*

a.    In August 2009, BEAU B. BRINDLEY, through Alexander Vasquez, solicited Joel Perez to plead guilty to the indictment without implicating Vasquez in the factual basis of a plea agreement.

b.    In or around August 2009, BEAU B. BRINDLEY and Attorney A rehearsed multiple versions of a direct examination with Alexander Vasquez in the event Vasquez testified on his own behalf.  The proposed direct examinations contained false explanations as to why Vasquez was driving a Pontiac Bonneville on August 5, 2008.

c.    In or around August 2009, BEAU B. BRINDLEY and others recruited Marina Collazo to testify falsely on behalf of Alexander Vasquez.

d.    In or around August 2009, BEAU B. BRINDLEY rehearsed a direct examination with Marina Collazo.  The proposed direct examination of Collazo contained a false explanation as to why Vasquez was driving a Pontiac Bonneville on August 5, 2008.

e.    On or about August 21, 2009, BEAU B. BRINDLEY prepared a letter to Marina Collazo in which he directed Collazo on how to respond to questions on direct examination and cross-examination.  The letter also directed Collazo to act "surprised" and "offended" in response to certain questions.

8

Case: 1:14-cr-00468 Document #: 25 Filed: 01/15/15 Page 9 of 40 PageID #:74


       f.      Between August 27, 2009, and September 1, 2009, Marina Collazo testified falsely during the trial of Alexander Vasquez, as directed by BEAU B. BRINDLEY and as alleged in Counts Two, Three, and Four of this Superseding Indictment.

       g.      On May 28, 2013, BRINDLEY and Attorney B visited Vasquez in federal prison.  During the visit, Vasquez informed BRINDLEY that representatives from the U.S. Department of Justice had visited Vasquez and asked Vasquez about perjury committed during his trial.  On or about June 2, 2013, through on or about June 20, 2013, BEAU B. BRINDLEY contacted Attorney C and asked Attorney C to attempt to prevent the U.S. Department of Justice representatives from speaking to Vasquez.  Attorney C was a personal injury and workers' compensation attorney and had no experience in criminal law.  At the time, Attorney C had been licensed to practice law for approximately 30 days.

       h.      On June 4, 2013, Attorney C, after consulting with BRINDLEY, wrote to an Assistant U.S. Attorney that he was "exercising Mr. Vasquez's Fifth Amendment rights on his behalf" and was "requesting that no agents attempt to speak with Mr. Vasquez until I've had a chance to meet with him," all in an attempt to prevent U.S. Department of Justice representatives from speaking to Vasquez.

*United States of America v. Bennie Wilcox*

       i.      Before Karilyn Wilcox testified on December 7, 2010, the United States disclosed evidence to BEAU B. BRINDLEY that related to an IP address associated with Karilyn Wilcox's employer and access to Bennie Wilcox's email account utilizing that IP address on June 6, 2007 and June 8, 2007.  In response, MICHAEL THOMPSON directed defense witness Karilyn Wilcox to testify falsely at the trial of Bennie Wilcox.  THOMPSON directed Karilyn Wilcox to testify that she disclosed the user name and password to Bennie

Wilcox's email account to a co-worker. THOMPSON told Karilyn Wilcox that the individual she named should no longer work with her. THOMPSON knew that such testimony would be false.

   j. On or about December 7, 2010, BEAU B. BRINDLEY presented the false testimony of Karilyn Wilcox at the trial of Bennie Wilcox. Karilyn Wilcox testified falsely as directed by MICHAEL THOMPSON and as alleged in Counts Six, Seven, and Eight of this Superseding Indictment.

*United States of America v. Richard Harrington*

   k. Between on or about March 4, 2010, and December 15, 2011, BEAU B. BRINDLEY directed Richard Harrington to testify falsely at his own trial. BRINDLEY instructed Harrington to deny ownership of a .40 caliber Smith and Wesson firearm found in Harrington's car at the time of his arrest on October 7, 2009, which testimony BRINDLEY knew to be false.

   l. Between March 4, 2010, and December 15, 2011, BEAU B. BRINDLEY delivered multiple versions of a proposed direct examination to Harrington to prepare him to testify falsely at his own trial. The proposed direct examinations contained false denials as to Harrington's possession of a .40 caliber Smith and Wesson firearm found in Harrington's car at the time of his arrest on October 7, 2009. Harrington was directed to memorize the answers contained in the proposed direct examinations.

   m. Between March 4, 2010, and December 15, 2011, BEAU B. BRINDLEY, and other attorneys from the Law Office of Beau B. Brindley and Associates rehearsed prepared direct examinations with Richard Harrington. The proposed direct examination of Harrington contained a false denial as to Harrington's possession of a .40 caliber Smith and Wesson firearm.

10

n. On or about December 15, 2011, BEAU B. BRINDLEY presented the false testimony of Richard Harrington at Harrington's trial. Harrington testified falsely as directed by BRINDLEY and as alleged in Counts Ten, Eleven, and Twelve of this Superseding Indictment.

*United States of America v. Isaac Myles*

o. Between on or about February 16, 2012, and August 21, 2012, BEAU B. BRINDLEY directed Isaac Myles to testify falsely at his own trial. BRINDLEY directed Myles to falsely deny that he possessed a .22 caliber firearm in furtherance of drug trafficking activities, and falsely testify as to when and why he bought the .22 caliber firearm, all of which BRINDLEY knew would be false.

p. Between on or about February 16, 2012, and August 21, 2012, BEAU B. BRINDLEY rehearsed multiple versions of a direct examination with Myles to prepare him to testify falsely at his own trial. The proposed direct examinations contained false denials as to Myles's possession and use of a .22 caliber firearm found in Myles's residence at the time of his arrest on December 16, 2009. Myles was directed to memorize the answers contained in the proposed direct examinations.

q. On or about August 21, 2012, BEAU B. BRINDLEY presented the false testimony of Isaac Myles at Myles's trial. Myles testified falsely as directed by BRINDLEY and as alleged in Counts Fourteen, Fifteen, and Sixteen of this Superseding Indictment.

*United States of America v. Rahshone Burnett*

r. Between on or about January 23, 2013, and February 6, 2013, BEAU B. BRINDLEY directed Richard Harrington to testify at the trial of Rahshone Burnett that Harrington did not pool money with Burnett in order to buy heroin; and that he did not give

11

Burnett quantities of heroin prior to Burnett paying for the heroin. BRINDLEY knew this testimony would be false.

s. Between January 23, 2013, and February 6, 2013, BEAU B. BRINDLEY, MICHAEL THOMPSON, and Attorney B prepared Harrington to testify, at Rahshone Burnett's trial, that Harrington did not pool money with Burnett in order to buy heroin; and that he did not give Burnett quantities of heroin prior to Burnett paying for the heroin.

t. Between on or about February 4, 2013, and February 6, 2013, BEAU B. BRINDLEY presented the false testimony of Richard Harrington at the trial of Rahshone Burnett. Harrington testified falsely as directed by BRINDLEY and as alleged in Counts Seventeen and Eighteen of this Superseding Indictment.

_United States of America v. David Conrad_

u. On April 7, 2010, BEAU B. BRINDLEY met with David Conrad at the Metropolitan Correctional Center in Chicago. On April 7, 2010, after the meeting with Conrad, BEAU B. BRINDLEY and MICHAEL THOMPSON prepared and filed a "Status Report" with the United States District Court for the Northern District of Illinois. In the Status Report, BRINDLEY and THOMPSON falsely stated the following with respect to Conrad's physical condition during the meeting between BRINDLEY and Conrad: "Mr. Conrad was sweating profusely during the meeting. His hands shook violently . . . The meeting was twice interrupted by Mr. Conrad leaving the room to vomit."

<u>In RE</u>: A Witness Before the Special September 2012 Grand Jury

        v.      On or about October 23, 2012, in response to the October 16, 2012 grand jury subpoena served on Individual A, a letter was sent from the Law Offices of Beau B. Brindley to an Assistant U.S. Attorney in the Northern District of Illinois.   The letter was signed and sent by THOMPSON.   In the letter, THOMPSON stated, "I have been retained to represent [Individual A], who has been subpoenaed to testify before a grand jury on today's date, October 23, 2012 . . . this letter provides notice of [Individual A's] intent to assert her Fifth Amendment rights and decline to answer any substantive questions posed to her if called before the grand jury," all of which THOMPSON and BRINDLEY knew to be false.   In response to the letter, Individual A's grand jury appearance on October 23, 2012 was cancelled.

        All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about August 27, 2009, at Chicago, in the Northern District of Illinois,

### BEAU BRINDLEY

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States v. Alexander Vasquez*, Case Number 08-CR-625, when BRINDLEY asked the following questions and Marina Collazo gave the following answers:

Q.   Do you remember approximately what time [Joel Perez] left with his friend?

A.   Had to be 4:00 o'clock.

Q.   And was it after that that you asked Alexander [Vasquez] that if he would go and pick him up?

A.   It wasn't right away, but some moments afterwards.   I told him he should go.   I don't want to go.

Q.   And you said that he agreed, right?   Yes?

A.   Yes.   Yes.

Defendant BRINDLEY knew that this testimony was false because he knew Marina Collazo had not asked Alexander Vasquez to pick up Joel Perez on August 5, 2008.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## COUNT THREE

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about August 27, 2009, at Chicago, in the Northern District of Illinois,

### BEAU BRINDLEY

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States v. Alexander Vasquez*, Case Number 08-CR-625, when BRINDLEY asked the following questions and Marina Collazo gave the following answers:

Q.    Now, when Alexander Vasquez went to go and pick up Joel Perez, did you give him the keys to the Bonneville right away when he left?

A.    No. He walked out and then walked back in and told me that I was blocking his car.

Q.    Where was Mr. Vasquez's car parked?

A.    In the garage.

Q.    Was that a gray Toyota?    Is that the kind of car that was there?

A.    Yes.

Q.    And where was the Bonneville?

A.    In the back.

Q.    Directly behind it so it couldn't get out?

A.    Um-hum, yes.

Q.    So did Mr. Vasquez actually go out to the Toyota first?

A.    Yes, I think so.    I heard the door open and close.

Q.    And then he come back inside because the car was blocking it?

A.    Yes.

Q.    And so when Mr. Vasquez came back inside, what did you do?

A.    I told him to take the car, the keys.

Q.    And so you gave him the keys to the Bonneville?

A.    Yes.

Defendant BRINDLEY knew that this testimony was false because he knew Marina Collazo had not given Alexander Vasquez keys to the Bonneville on August 5, 2008.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

16

## COUNT FOUR

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about September 1, 2009, at Chicago, in the Northern District of Illinois,

### BEAU BRINDLEY

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Alexander Vasquez*, Case Number 08-CR-625, when BRINDLEY asked the following questions and Marina Collazo gave the following answers:

Q.  And when I spoke to you about what you remembered about August 5th, I told you that all I wanted you to do was tell us the truth about what happened.   That's what I told you, isn't it?

\*              \*              \*

Q.  Isn't it?

A.  Yes.

Q.  Let's get one thing straight.   During all the meetings that I ever had with you, Mrs. Perez, I never once told you what to say about anything, did I?

\*              \*              \*

A.  No, you didn't.

Defendant BRINDLEY knew that this testimony was false because he had in fact planned and agreed with Marina Collazo that Collazo would testify falsely about the events of August 5, 2008, based on fictitious information provided to Collazo by BRINDLEY.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

17

## COUNT FIVE

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

Between in or around August 2009, and in or around September 2009, at Chicago, in the Northern District of Illinois,

## BEAU B. BRINDLEY

corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so, namely, the trial of *United States of America v. Alexander Vasquez*, Case Number 08-CR-625, in the United States District Court for the Northern District of Illinois, by knowingly presenting false testimony.

In violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT SIX

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about December 7, 2010, at Chicago, in the Northern District of Illinois,

### BEAU B. BRINDLEY and
### MICHAEL THOMPSON

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Bennie Wilcox*, Case Number 08-CR-256, when defendant BRINDLEY asked the following questions and Karilyn Wilcox gave the following answers:

Q:   And what steps did you take to monitor his [Bennie Wilcox's] e-mail during that week before he - - you were going to be out of town?

A:   Well, I - - I became obsessive over it really.   I mean, I remember some days at work I would check it all the time or I would even leave it open in the morning and just, you know, look as emails came in and came out.   I wanted to make sure he didn't delete anything before I could see it.   I know even when I would be in long meetings or had to leave the office, I had a friend Mary at work even just check it to see if anything came in or there was anything he tried to delete or catch it before I got back.

Defendants BRINDLEY and THOMPSON knew this testimony regarding "Mary" was false because THOMPSON directed Karilyn Wilcox to testify falsely about giving a co-worker access to Bennie Wilcox's email account.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## COUNT SEVEN

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about December 7, 2010, at Chicago, in the Northern District of Illinois,

### MICHAEL THOMPSON

knowingly made and caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Bennie Wilcox*, Case Number 08-CR-256, when Karilyn Wilcox gave the following answers during cross-examination:

Q:     And you - - does Mary still work at United Health Group?

A:     No, she doesn't.

Q:     When did she leave?

A:     I don't remember.    Maybe a year ago.

Defendant THOMPSON knew this testimony was false because THOMPSON directed Karilyn Wilcox to testify that she gave a co-worker access to Bennie Wilcox's email account; and that the co-worker Wilcox named should no longer work at United Health Group.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## COUNT EIGHT

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about December 7, 2010, at Chicago, in the Northern District of Illinois,

**BEAU B. BRINDLEY and
MICHAEL THOMPSON**

knowingly caused the making of a false material declaration under oath in the United States

District Court during the trial of *United States of America v. Bennie Wilcox*, Case Number

08-CR-256, when defendant BRINDLEY asked the following questions and Karilyn Wilcox

gave the following answers:

Q:      All right.   Now, you were asked questions about whether you've ever talked to anyone about or told anyone about Mary checking for you with this e-mail in the -- before today.   Mrs. Wilcox, in fact, have you been interviewed by people associated with the defense of your husband on multiple occasions prior to today?

A:      Yes

Q:      And during those previous interviews, had you disclosed that information before?

A:      Yes

*        *        *

Q:      Was the answer to that question, yes, you had disclosed this information to them

A:      Yes

Q:      -- before today?

Defendants BRINDLEY and THOMPSON knew this testimony was false because

Karilyn Wilcox had not disclosed information about "Mary," prior to December 7, 2010, during

multiple prior interviews with people associated with the defense of Bennie Wilcox.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## COUNT NINE

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about December 7, 2010, at Chicago, in the Northern District of Illinois,

**BEAU B. BRINDLEY and
MICHAEL THOMPSON**

corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so, namely, the trial of *United States of America v. Bennie Wilcox*, Case Number 08-CR-256, in the United States District Court for the Northern District of Illinois, by knowingly presenting false testimony.

In violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT TEN

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about December 15, 2011, and December 16, 2011, at Chicago, in the Northern District of Illinois,

### BEAU B. BRINDLEY

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Richard Harrington*, Case Number 09-CR-814, when defendant BRINDLEY asked the following questions and Richard Harrington gave the following answers:

Q.  When you say you're not guilty of this charge, can you explain what you mean and why you say that?

A.  Because the gun was not mine.    I never possessed that gun.

\*              \*              \*

Q.  Mr. Harrington, this exhibit that's been admitted as Government Exhibit Firearm [Smith and Wesson .40 caliber firearm], is this your gun?

A.  No.

Q.  Have you ever possessed a gun like this?

A.  No.

Q.  Have you ever carried a gun like this one?

A.  No.

\*              \*              \*

Q.  All right.    But possessing this handgun, the .40-caliber Smith & Wesson charged in this case, is that something that you ever did?

A.  No, it is not.

\*              \*              \*

23

Q.   Okay.   And was there ever any point in time when you purchased or owned or possessed one of those guns, the .40 caliber Smith & Wesson?

A.   No.

\*          \*          \*

Q.   Did you ever possess that firearm -- .40-caliber Smith & Wesson – on October 7th, 2009?

A.   I never had that firearm.

Defendant BRINDLEY knew this testimony was false because BRINDLEY and Richard Harrington planned and agreed that Harrington would testify falsely that Harrington had never possessed the Smith and Wesson .40 caliber firearm.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## COUNT ELEVEN

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about December 15, 2011, and December 16, 2011, at Chicago, in the Northern District of Illinois,

### BEAU B. BRINDLEY

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Richard Harrington*, Case Number 09-CR-814, when defendant BRINDLEY asked the following questions and Richard Harrington gave the following answers:

Q.    That gun that was found in the car after your arrest, did you know that gun was in the car?

A.    No, I did not.

*          *          *

Q.    Okay.  Now, when you left that night to go to meet Mingo and this supplier, did you take any firearms with you?

A.    No, I did not.

Q.    Okay.   Did you put any firearms in your car?

A.    No, I did not.

Q.    Did you know that there were any firearms in the car with you when you got in to go meet with Mingo and the supplier?

A.    No, I did not.

*          *          *

Q.    Did you have any firearms or know about any firearms in the car that night [October 7, 2009]?

A.    Absolutely not.

\*              \*              \*

Q.      And this particular handgun [Smith and Wesson .40 caliber firearm], did you have any knowledge or any awareness that this gun was anywhere near your GMC Denali on October the 7th 2009?

A.      No, I do not.

BRINDLEY knew this testimony was false because BRINDLEY and Richard Harrington planned and agreed that Harrington would testify falsely that Harrington did not know that the Smith and Wesson .40 caliber firearm was in Harrington's car on October 7, 2009.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

26

## COUNT TWELVE

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about December 15, 2011, and December 16, 2011, at Chicago, in the Northern District of Illinois,

### BEAU B. BRINDLEY

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Richard Harrington*, Case Number 09-CR-814, when defendant BRINDLEY asked the following questions and Richard Harrington gave the following answers:

Q. Okay. Now, were there guns that you did have to protect yourself and your drug money?

A. Yes. I did have my own guns.

Q. Were you charged with those guns?

A. No, I was not charged with those guns.

\*　　　\*　　　\*

Q. Okay. Now, did you have other guns that you actually did use to protect your drug proceeds?

A. Yes. I had my own guns.

Q: But did the government ever charge you with those?

A: No, they did not.

BRINDLEY knew this testimony was false because BRINDLEY and Richard Harrington planned and agreed that Harrington would testify falsely that Harrington had not possessed the Smith and Wesson .40 caliber firearm, as charged in Count Eighteen of *United States of America v. Richard Harrington*, Case Number 09-CR-814, in furtherance of drug trafficking activities.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## COUNT THIRTEEN

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about December 15, 2011, and December 16, 2011, at Chicago, in the Northern District of Illinois,

### BEAU B. BRINDLEY

corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so, namely, the trial of *United States of America v. Richard Harrington*, Case Number 09-CR-814, in the United States District Court for the Northern District of Illinois, by knowingly presenting false testimony.

In violation of Title 18, United States Code, Section 1512(c)(2).

29

## **COUNT FOURTEEN**

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about August 21, 2012, at Chicago, in the Northern District of Illinois,

### **BEAU B. BRINDLEY**

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Isaac Myles*, Case Number 10-CR-647, when defendant BRINDLEY asked the following questions and Isaac Myles gave the following answers:

Q:      Okay.   Now, did you own a gun in December - - on the 16th, 2009?

A:      Yes.

Q:      Can you tell me when you bought that gun?

A:      I bought that gun in November '09, two weeks before Thanksgiving.

Q:      What kind of gun was it?

A.      It was a .22 revolver.

*              *              *

Q.      Can you explain why it is you bought the gun in November of '09?

A.      In November of '09 - - I stay in a high crime area, and in November of '09 there was a lot of break-ins.   And then our house had -- I was a victim – my mother's garage had got broken into.   They stole her lawnmower and snowblower out of the garage and I got very upset about that.

Q.      Okay. And when, approximately, did that happen where the garage was broken into and the items were stolen that belonged to your mother?

A.      Maybe a week – no.   It was maybe a week-and-a-half before I purchased that gun.

*              *              *

Q.      And what was the only purpose you had when you bought the gun?

30

A.       I wanted to be able to protect my mother's house . . . .

Defendant BRINDLEY knew this testimony was false because BRINDLEY and Isaac Myles planned and agreed that Isaac Myles would testify falsely about when and why Myles purchased the .22 caliber revolver.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## COUNT FIFTEEN

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about August 21, 2012, at Chicago, in the Northern District of Illinois,

### BEAU B. BRINDLEY

knowingly made and caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Isaac Myles*, Case Number 10-CR-647, when defendant BRINDLEY asked the following questions and Isaac Myles gave the following answers:

Q:    Now, when, if ever, did you take the firearm that you purchased from Will [.22 caliber firearm] to Lashon Finley's residence, where you mixed heroin?

A:    Never.

Q:    The firearm [.22 caliber revolver] that you purchased that you said for protection at your mom's house, what did you do with it after you bought it?

A:    I put it under my mattress in my bedroom.

Q:    And when if ever, did you take it out from under that mattress after that?

A:    I never had to.

\*          \*          \*

Q:    When, if at any time, did you carry the .22-caliber handgun you purchased?

A:    Never.

\*          \*          \*

Q:    Mr. Myles, the gun under the mattress, the .22-caliber gun, when, if ever, did you use it in connection with any drug purchase, use, or sale?

A:    Never.

\*          \*          \*

Q:    So what did the gun that you kept under your mattress have to do with drug-dealing?

A:     Nothing.

Q:     When, if at any time, did you take it out at all when you had drugs, ever?

A:     Never.

Defendant BRINDLEY knew this testimony was false because BRINDLEY and Isaac Myles planned and agreed that Isaac Myles would testify falsely about whether Myles used or possessed the .22 caliber firearm in connection with drug trafficking activities.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## COUNT SIXTEEN

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about August 21, 2012, at Chicago, in the Northern District of Illinois,

**BEAU B. BRINDLEY**

corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so, namely, the trial of *United States of America v. Isaac Myles*, Case Number 10-CR-647, in the United States District Court for the Northern District of Illinois, by knowingly presenting false testimony.

In violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT SEVENTEEN

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about February 4, 2013, at Chicago, in the Northern District of Illinois,

### BEAU B. BRINDLEY

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Rahshone Burnett*, Case Number 09-CR-1030, when defendant BRINDLEY asked the following questions and Richard Harrington gave the following answers:

Q.    Okay.   And when you sold him the 125 or 150 grams [of heroin], when did he pay you for that?

A.    He paid me before he got the grams.

\*              \*              \*

Q.    Did you ever wait at any time, whether it was 1 gram or 100 grams, did you ever wait and let him go out and sell the product and pay you later? Did you ever do that?

A.    No.   We didn't have that understanding.

\*              \*              \*

Q.    When Rahshone gave you money in terms of purchasing heroin, what was that money for?   When he handed you the money, what was it for?

A.    It was for heroin.

Q.    And after he gave you the money, is that when he received the heroin?

A.    Yes, it is.

\*              \*              \*

Q.    Okay . . . was there ever a time where you gave him heroin before, where you gave him heroin before he gave you money?

A.    No.

Defendant BRINDLEY knew this testimony was false because BRINDLEY and Richard Harrington planned and agreed that Harrington would testify falsely that Harrington never gave heroin to Rahshone Burnett before Burnett paid for the heroin.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## **COUNT EIGHTEEN**

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about February 5, 2013, at Chicago, in the Northern District of Illinois,

### **BEAU B. BRINDLEY**

knowingly caused the making of a false material declaration under oath in the United States District Court during the trial of *United States of America v. Rahshone Burnett*, Case Number 09-CR-1030, when defendant BRINDLEY asked the following questions and Richard Harrington gave the following answers:

> Q.    Okay . . . did Rahshone Burnett ever agree to combining his money with yours for the purpose of getting heroin at a cheaper price?
>
> A.    No, he did not.
>
> *              *              *
>
> Q.    When, if at any time, did you allow him to get a lower price because you put his money with yours?   When did that ever happen?
>
> A.    That never happened.

Defendant BRINDLEY knew this testimony was false because BRINDLEY and Richard Harrington planned and agreed that Harrington would testify falsely that Harrington and Rahshone Burnett never pooled their money to buy heroin.

In violation of Title 18, United States Code, Sections 1623(a) and 2.

## COUNT NINETEEN

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about February 4, 2013, and February 5, 2013, at Chicago, in the Northern District of Illinois,

### BEAU B. BRINDLEY

corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so, namely, the trial of *United States of America v. Rahshone Burnett*, Case Number 09-CR-1030, in the United States District Court for the Northern District of Illinois, by knowingly presenting false testimony.

In violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT TWENTY

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

1.　　On or about April 7, 2010, at Chicago, in the Northern District of Illinois,

**BEAU B. BRINDLEY and**
**MICHAEL THOMPSON**

corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so, namely, case *United States of America v. David Conrad*, Case Number 05-CR-931, in the United States District Court for the Northern District of Illinois, by filing a document with the court, titled "Status Report," which defendants knew contained false information about the physical manifestations of illness that David Conrad exhibited on April 7, 2010.

2.　　In the Status Report, BRINDLEY and THOMPSON falsely stated the following with respect to the physical manifestations of illness that David Conrad exhibited during the meeting between BRINDLEY and Conrad on April 7, 2010: (a) "Mr. Conrad was sweating profusely during the meeting;" (b) "His hands shook violently; and (c) "The meeting was twice interrupted by Mr. Conrad leaving the room to vomit."

In violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

## COUNT TWENTY-ONE

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about October 23, 2012, at Chicago, in the Northern District of Illinois,

**BEAU B. BRINDLEY and
MICHAEL THOMPSON**

corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so,

namely, a federal grand jury investigation in the Northern District of Illinois, by falsely asserting

to the United States Attorney's Office for the Northern District of Illinois that (a) MICHAEL

THOMPSON was retained to represent grand jury witness Individual A; and (b) Individual A

would assert her Fifth Amendment rights and decline to answer any substantive questions if

called before the grand jury, knowing that THOMPSON did not represent Individual A and that

Individual A did not intend to assert her privilege against self-incrimination.

In violation of Title 18, United States Code, Sections 1512(c)(2) and 2.


A TRUE BILL:


_____

FOREPERSON


Date:_____


_____
MICHAEL J. CHMELAR
MEL S. JOHNSON
Special Attorneys to the
United States Attorney General