**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | NO. 14 CR 468 |
| | ) | |
| BEAU B. BRINDLEY and | ) | Hon. Harry D. Leinenweber |
| MICHAEL THOMPSON | ) | |

**DEFENDANTS' JOINT MOTION**
**FOR GOVERNMENT PRODUCTION OF INFORMATION REGARDING**
**COMMUNICATIONS BETWEEN GOVERNMENT PROSECUTORS**
**AND POTENTIAL WITNESSES, INCLUDING COMMUNICATIONS**
**WITH ATTORNEYS FOR POTENTIAL WITNESSES**

Now come the Defendants Beau B. Brindley, by his attorney Cynthia Giacchetti, and Michael Thompson, by his attorneys Edward M. Genson and Blaire C. Dalton, pursuant to Federal Rules of Criminal Procedure 16 (E)(i), 18 USC Section 3500, the principles established by *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972), and its progeny, and the due process clause of the United States Constitution, and hereby respectfully move this Court to order the Government to produce any and all information, including but not limited to documents, relating to conversations and other communications, whether written or oral, between Government prosecutors and/or agents working at their direction and potential witnesses, including conversations and other communications with attorneys for potential witnesses, relating to (1) the witness's status as a target or subject of any pending criminal

1

investigation, (2) the potential for the witness to be charged with a criminal offense as a result of such criminal investigation, (3) the possible impact of the potential witness's cooperation with the Government on the decision to charge the witness with a criminal offense, (4) the possible impact of the potential witness's cooperation with the Government on a reduction of any pending sentence being served by the witness, (5) the nature or subject matter of the testimony sought by the Government from the witness, (6) the Government agents' or attorneys' beliefs or opinions as to that testimony or beliefs as to the facts, and (7) any proffer of testimony from the witness, including a proffer of testimony made by the witness's attorney.

In support of this request, the following is stated:

A review of the discovery materials provided by the Government reveals the following pattern: Potential witnesses are contacted by the Government and asked to implicate the Defendants in criminal conduct. Those persons either deny any criminal conduct or refuse to talk to the Government representative.

Subsequently, without any explanation in the discovery, these persons then attend previously scheduled meetings with Government prosecutors or appear in the grand jury and provide proffers or testimony now implicating the Defendants in criminal conduct.

Almost all of the Government witnesses follow this pattern. For example, Witness AV was visited in federal prison by Chicago Office prosecutors and

agents on April 17, 2013, and on May 29, 2013. He was questioned about criminal activity on the part of the Defendants and made no statements incriminating the Defendants on either date. Then, five months later, the Wisconsin prosecutors met with AV in prison on October 1, 2013, for purposes of a previously scheduled proffer and AV makes a series of incriminating statements pursuant to a proffer agreement.

      Similarly, Witness RH was visited in federal prison by Chicago prosecutors and agents on June 18, 2013 and June 28, 2013, and contacted via telephone by agents on June 25, 2013. During these conversations, RH never made any statements indicating criminal activity on the part of himself or the Defendants. Yet on April 11, 2014, the Wisconsin prosecutors met with RH in prison for purposes of a previously scheduled proffer pursuant to a proffer agreement and he makes a series of incriminating statements.

      Witness KW explicitly stated in an August 14, 2014, interview with the Government agent that she did not knowingly testify falsely at trial. Yet Government prosecutors put her in the grand jury a few weeks later to testify in contradiction to her earlier interview. Similarly, during an interview on November 11, 2013, Witness MC told agents she had no knowledge about the Defendants advising anyone to lie under oath and no knowledge about a particular witness lying under oath at trial. Then, Government prosecutors put MC in the grand jury on May 15, 2014, to testify that she had significant

knowledge about the witness purportedly lying under oath at the trial.

In addition, as to Witness IM, pleadings filed in the Seventh Circuit Court of Appeals by IM's appellate attorney establish that IM and his attorney were involved in detailed discussions with the Government regarding the benefits of IM becoming a witness against the Defendants before the Government spoke to IM at a BOP facility on September 24, 2014. Those pleadings also state that IM's appellate attorney made an "attorney proffer" to the Government as part of these negotiations.

Clearly, there were conversations or other forms of communication between the Government and its witnesses or witnesses' counsel that resulted in these significant changes in their position and their testimony. These conversations or communications had to include discussion of the witness's status in the pending criminal investigation, the witness's exposure to criminal prosecution as a result of the pending criminal investigation, and the potential benefits of cooperation with the Government including avoiding prosecution and reducing pending sentences. These conversations also had to involve discussion of the subject matter of the cooperation/testimony being sought from the witness and may have included statements by the Government as to their belief as to the facts or their opinion about the witness's testimony.

Such conversations are central to the witnesses' motives to testify against the Defendants and the influences that shaped the content of their testimony. As

such, these communications are constitutionally required to be provided to the defense under the principles of *Brady, Giglio,* and their progeny.

Furthermore, these conversations likely included discussion of what the witness had to offer in the way of testimony and whether that testimony comported with the Government's view of events. It appears that the proffers and grand jury appearances in which witnesses changed their previous positions and testified against the Defendants were scheduled in advance. Given this circumstance, it is highly unlikely that the Government prosecutors traveled to an out of state facility or put the witness in the grand jury without knowing in advance the substance of their testimony. As to the witness IM we know from the Seventh Circuit filing that an "attorney proffer" was given to the Government describing IM's anticipated testimony.

Representations as to a witness's potential testimony and/or attorney proffers are statements of that witness and are discoverable either under 18 USC Section 3500 or as *Brady/Giglio* material. And, in the event the Government provided an opinion as to whether such proffered testimony was consistent with the Government's view of the facts, provided their own view of the facts, or suggested additional facts or subjects for the testimony, such statements by the Government to the witness must be produced as *Brady/Giglio* material.

The Defense has made several requests for this information. The Government has refused, describing the information requested as

5

"administrative" or claiming that they "fail to see how coordinating a witness's appearance in the grand jury can be construed as favorable evidence to your clients." This obtuse answer purposely misconstrues the Defense's request. The Defense is not seeking information regarding administrative matters such as witness scheduling or travel arrangements. The Defense is seeking all substantive conversations between the Government and the witness or witness's attorney that may have provided a motive for the witness to make statements or testify against the Defendants or that may have influenced the nature of those statements or testimony.

      The Government in its response to the Defense requests also noted that it had provided proffer letters, immunity orders, and letter agreements that represent "the binding and complete agreements" the Government reached with each witness. While such documents certainly do constitute *Giglio* material, they do not completely satisfy the Government's obligations under *Brady* and *Giglio.* Where, as here, the witnesses in essence changed their position in order to implicate the Defendants, the Defendants are entitled to know what statements by the Government may have motivated and/or shaped that change at the time the statements or testimony were originally made, even if before the "binding and complete agreements" were finalized. *See, e.g., United States v. Sudikoff,* 36 F. Supp. 2d 1196 (C.D. Cal. 1999).

In the event the information requested has not been reduced to writing, the Government should be required to provide a written summary of the requested information.

In the event the Government continues to object to production of the requested information, we respectfully move this Court to order that the requested information be submitted to the Court for an *in camera* review so that the Court can make an independent determination as to whether that information should be produced to the Defendants.

## CONCLUSION

Wherefore, for the foregoing reasons, Defendants Beau B. Brindley and Michael Thompson respectfully move this Court to order the Government to produce any and all information, including but not limited to documents, relating to conversations and other communications, whether written or oral, between Government prosecutors and/or agents working at their direction and potential witnesses, including conversations and other communications with attorneys for potential witnesses, relating to (1) the witness's status as a target or subject of any pending criminal investigation, (2) the potential for the witness to be charged with a criminal offense as a result of such criminal investigation, (3) the possible impact of the potential witness's cooperation with the Government on the decision to charge the witness with a criminal offense, (4) the possible impact of the potential witness's cooperation with the Government on a reduction of any

pending sentence being served by the witness, (5) the nature or subject matter of the testimony sought by the Government from the witness (6) the Government agents' or attorneys' beliefs or opinions as to that testimony or beliefs as to the facts; and (7) any proffer of testimony from the witness, including a proffer of testimony made by the witness's attorney.

    Respectfully submitted,

    */s/ Cynthia Giacchetti*
    Attorney for Defendant
    Beau B. Brindley

    */s/Edward M. Genson*
    One of the Attorneys for
    Defendant Michael Thompson

CYNTHIA GIACCHETTI
53 West Jackson–Suite 1460
Chicago, Illinois 60604
312-939-6440

EDWARD M. GENSON
BLAIRE C. DALTON
53 W. Jackson–Suite 1420
Chicago, Illinois 60604
312-726-9015

## CERTIFICATE OF SERVICE

Cynthia Giacchetti, attorney for the Defendant Beau Brindley hereby certifies that "Defendants' Joint Motion for **Government Production of Information Regarding Communications Between Government Prosecutors And Potential Witnesses, Including Communications with Attorneys for Potential Witnesses**" was filed electronically using the Court's CM/ECF E-Filing system and was served on all parties on June 27, 2015, by operation of the Court's electronic filing system in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

By:/s/ *Cynthia Giacchetti*