```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION

UNITED STATES OF AMERICA,         )
                                  )
            Plaintiff,            )
                                  )
     v.                           )  No. 14 CR 468
                                  )
BEAU B. BRINDLEY, et al.,         )  Chicago, Illinois
                                  )  June 30, 2015
            Defendants.           )  9:09 a.m.

                    TRANSCRIPT OF PROCEEDINGS

                BEFORE THE HARRY D. LEINENWEBER

APPEARANCES:

For the Plaintiff:        MR. MICHAEL J. CHMELAR
                          Assistant United States Attorney
                          Suite 500
                          517 East Wisconsin Avenue
                          Milwaukee, Wisconsin 53202
                          (414) 297-1728
                          michael.chmelar@usdoj.gov

For the Defendant:        LAW OFFICE OF CYNTHIA GIACCHETTI
                          BY:  MS. CYNTHIA L. GIACCHETTI
                          Suite 1460
                          53 West Jackson Boulevard
                          Chicago, Illinois 60604
                          (312) 939-6440
                          cg@cgdefense.com

Court Reporter:           Judith A. Walsh, CSR, RDR, CRR
                          Official Court Reporter
                          219 S. Dearborn Street, Room 1944
                          Chicago, Illinois 60604
                          (312) 702-8865
                          judith_walsh@ilnd.uscourts.gov
```

1      (Proceedings heard in open court:)
2              THE CLERK:  14 CR 468, United States versus Brindley
3   and Thompson.
4              MR. CHMELAR:  Good morning, your Honor.  Michael
5   Chmelar for the United States.
6              MS. GIACCHETTI:  Good morning, your Honor.  Cindy
7   Giacchetti --
8      (Pause.)
9              THE COURT:  Just a second.
10             MS. GIACCHETTI:  Good morning, your Honor.  Cindy
11  Giacchetti on behalf of Mr. Brindley.
12             THE COURT:  Status?
13             MS. GIACCHETTI:  And I will stand in for Mr. Genson
14  on behalf of Mr. Thompson.
15             Your Honor, we had -- and I apologize for the
16  lateness of the motions.  I had meant to get them in early,
17  two additional discovery motions.
18             THE COURT:  Do you have this information that she's
19  seeking and you're withholding it, or --
20             MR. CHMELAR:  No.  And I spoke to Ms. Giacchetti
21  about this, and we've exchanged numerous letters about this.
22  One of the requests deals with investigations conducted by the
23  Northern District of Illinois prior to the recusal of the
24  office.  And it related to two specific cases, Harrington and
25  Vazquez.

1                We got the substantive reports related to those cases
2    and we provided those to the defense.  I don't know what other
3    material --
4                THE COURT:  Ms. Giacchetti, does that satisfy you?
5                MS. GIACCHETTI:  Well, Judge, I want to make clear
6    that our request and what we think we're entitled to is not
7    just whatever somebody decided to put in a report but
8    information even if it was not put in a report, which appears
9    to have happened.
10               So that information may be an interview of a witness
11   that was not documented the way interviews are normally
12   documented, or it may be a conversation that the prosecutor
13   had with a witness making offers of reduced sentences, asking
14   for information.
15               So I guess my concern is -- I understand that the
16   written substantive material that has actually made it into
17   normal documentation has been provided.  What I'm concerned
18   about and we're seeing is that there -- there's an e-mail
19   reference to a proffer and then no report of a proffer.
20               I think that the underlying documentation should be
21   provided as to that.  Do we know that these reports reflect
22   all the contacts?  Information is covered by Brady and Giglio
23   even if it's not in documented form.
24               So if the government is saying this includes all the
25   information that there is, whether or not it was in documented

1  form, then there's obviously nothing I can do.
2          THE COURT: What you're telling me --
3          MS. GIACCHETTI: But the report --
4          THE COURT: -- is, let's say that Prosecutor A talked
5  to Witness B and got some information from him but didn't make
6  a note and that information would be helpful to defense, is
7  that what --
8          MS. GIACCHETTI: That's correct, Judge, that's
9  correct, or made statements to that witness about reduced
10 sentences which was done, at least is reflected in some of the
11 reports, then we -- if there wasn't a report of that, that
12 information is, in our opinion, something that the
13 government's required to give us.
14         THE COURT: What about that?
15         MR. CHMELAR: Well, she's -- Ms. Giacchetti is just
16 basically making assertions that these things exist. They
17 don't exist. We provided them with all substantive reports
18 which they weren't entitled to.
19         We provided them with all grand jury testimony, all
20 grand jury exhibits, all proffer letters, all 35 letter
21 agreements for all the witnesses.
22         THE COURT: Just assume without obviously deciding
23 that an individual did contact someone, was told no, he didn't
24 do it, didn't make a note of that and then later the witness
25 proffered and said it did do it or something, the information

```
 1  unrecorded, would that not be producible?
 2          MR. CHMELAR:  I don't -- if an --
 3          THE COURT:  It would require you, I guess, to talk to
 4  all of the people who worked on the case to say, did you get
 5  anything that would possibly be deemed Giglio material --
 6          MR. CHMELAR:  Right.
 7          THE COURT:  -- but was not noted and then make a --
 8  some kind of a document to say, no, there is no such
 9  information.
10          MR. CHMELAR:  We've collected all the material that
11  exists in the case including the limited material that existed
12  from the Chicago AUSAs prior to the case being assigned to the
13  Eastern District of Wisconsin.  We've reviewed the material.
14  We provided substantive material that was required to be
15  produced.
16          What we expressed in our letter to Ms. Giacchetti and
17  to Mr. Genson was we're not going to produce, you know,
18  communications that deal with administrative matters like, is
19  your witness available.
20          THE COURT:  No, they're not asking for that.
21          MR. CHMELAR:  And I understand, but that's what the
22  request was and that's what my response responded to.  We told
23  that we provided them with substantive communications, and
24  we've done that.  We've collected a universe of information.
25  We've reviewed it.  We provided --
```

Case: 1:14-cr-00468 Document #: 63 Filed: 07/07/15 Page 6 of 13 PageID #:247

6

1       THE COURT: Can you give them a letter saying that
2  you talked to all the people that worked on the case and
3  there's nothing of value to the defense that is not in
4  writing?
5       MR. CHMELAR: We provided them a response to their
6  discovery letters which basically said that. We've provided
7  them with all substantive --
8       THE COURT: If they do that, it seems to me that
9  that's the best they can do. If they say there's nothing that
10 wasn't reduced to writing that would be possibly helpful to
11 defense, then you have to take them on their word that they've
12 done that.
13      MS. GIACCHETTI: That's correct, Judge. And what I'm
14 saying is the answer that we keep getting is, "We've given you
15 all the written materials." And that's -- what we're asking
16 is, was the inquiry made.
17      THE COURT: Can you give --
18      MR. CHMELAR: We've given them all substantive
19 materials.
20      MS. GIACCHETTI: Again --
21      THE COURT: Including un -- anything that would not
22 have been reduced to writing that is valuable to the defense,
23 as an officer of the court, if you tell me that, that should
24 be sufficient.
25      MR. CHMELAR: Right. I don't know of any favorable

1 Brady material that --

2 THE COURT: And you have checked with everybody?

3 MR. CHMELAR: We checked with the agencies that were
4 involved before the recusal which were ATF and the DEA. And
5 we spoke to the AUSAs that were assigned to the underlying
6 matters in Harrington --

7 THE COURT: I don't think they can do any more than
8 that, Ms. Giacchetti.

9 MR. CHMELAR: -- and Vazquez. I don't know what
10 else, and I expressed this to Ms. Giacchetti, I'm not sure
11 what else they expect.

12 With respect to the second motion, we provided them
13 with the 35 -- Rule 35 letter agreements we made with each of
14 the cooperating witnesses. We provided them with proffer
15 reports, proffer letters, grand jury statements, 302's, grand
16 jury exhibits.

17 THE COURT: Based upon that, it seems to me that they
18 produced everything that would be producible.

19 MS. GIACCHETTI: Well, Judge, again, if that's the
20 representation that they --

21 THE COURT: That's what they're representing. He's
22 representing to me and he's an officer of the court --

23 MS. GIACCHETTI: I understand that.

24 THE COURT: -- and I'm very willing to take his
25 representation.

1  MS. GIACCHETTI: And Judge, as to the second motion
2  about conversations relate -- with witnesses or witnesses's
3  lawyers, not between the agents and the prosecutors themselves
4  but with witnesses and witnesses's lawyers, and as to these
5  particular matters, whether their client was a target, whether
6  their client would be prosecuted, whether -- what benefits
7  they could get from cooperation, any comments by the
8  government to the witness or the witness's lawyer about the
9  scope of the testimony, what they believed or didn't, and any
10 proffers back, do I understand the representation that's being
11 made that none of those things occurred orally because --
12 THE COURT: If they've been reduced to writing -- if
13 they occurred orally, they have been reduced to writing.
14 MR. CHMELAR: Some of what she's requesting is
15 privileged. We're not going to waive privilege. The other
16 material that we provided, we provided them copies of the
17 immunity orders that we obtained from the chief judge prior to
18 putting any witness in the grand jury.
19 THE COURT: Is there privilege on Giglio material? I
20 don't think so.
21 MR. CHMELAR: I'm sorry?
22 THE COURT: I don't think there's privilege on Brady
23 and Giglio material.
24 MR. CHMELAR: No. And to the extent that she's
25 talking about Brady and Giglio, we provided Brady and Giglio

1 material to them.  No other material exists regarding that.
2 If she's requesting conversations that we've had with defense
3 attorneys about coordinating their appearance, which we've --
4     THE COURT:  She indicated they're not interested in
5 that.
6     MS. GIACCHETTI:  Right, but conversations with
7 defense attorneys about the nature of the deals that could be
8 made, what would be the benefit their clients could have if
9 they provided information and any suggestion about what that
10 information is, if they're saying there were no such
11 conversations, then obviously, that's their representation to
12 the Court as officers of the court.
13     THE COURT:  All right.
14     MR. CHMELAR:  Well, Judge, we do have letter
15 agreements we reached with each cooperating witness, each
16 defendant who have been previously represented by Mr. Brindley
17 and their law firm.  We reached 35, Rule 35 agreements with
18 each of them, with each of their clients based on their
19 cooperation going forward.
20     We didn't get to their, in a -- at the very last
21 step.  I mean, those letters were negotiated in certain
22 situations.  But to the extent that they constitute Brady or
23 Giglio, we would tender those.  They don't.  We provided them
24 with the finalized 3500 material --
25     THE COURT:  All right.

1     MR. CHMELAR: -- I'm sorry, Rule 35 letter agreements
2  for each witness. We gave them to the defense. We identified
3  the Bates range that they exist in the discovery material that
4  we've tendered them. So I -- as I expressed to
5  Ms. Giacchetti, I'm not sure what other material they want.
6     I think they -- I think based on the motion that they
7  filed as, for example, with one of the particular witnesses
8  that was interviewed by the FBI, she denied certain criminal
9  conduct. She later retained an attorney. Then she was put
10 into the grand jury, and she implicated Mr. Thompson in the
11 crime, suborning perjury in an underlying matter.
12    In their letter to us and in the motion expresses
13 some confusion on how somebody would deny something to the FBI
14 on one occasion and then testify before the grand jury as to
15 committing a crime under a grant of immunity. We can't
16 explain to them why that process happened because we don't
17 have access to that witness. They're represented.
18    They can certainly contact the witness or attempt to
19 contact the witness or the witness's attorney to coordinate an
20 interview with them. But with respect to the communications
21 that we had with the witness to get them to the grand jury and
22 the understanding that we had with them about, you know, what
23 protections they would have in the grand jury, we provided
24 that.
25    THE COURT: Okay.

1 MS. GIACCHETTI: Judge, again, if they're saying that
2 as to that witness, there was no conversation regarding the
3 status covering these things with the lawyers that wasn't
4 reduced to writing, then that's their representation.
5 THE COURT: Okay. That's their representation.
6 All right. Anything else to report?
7 MR. CHMELAR: Yes. We've sent two written requests
8 for reciprocal discovery to the defense. We brought this up
9 with your Honor at the last status hearing. I think your
10 Honor mentioned to Ms. Giacchetti and to Mr. Genson at the
11 time it was probably about time they sent some information to
12 us. We've still gotten nothing.
13 THE COURT: Okay.
14 MS. GIACCHETTI: And, Judge, I will say at this
15 point, what we're using is basically, you know, they did a
16 search warrant and they took things. And so they've already
17 got most of what we're -- if I identify anything else that --
18 THE COURT: Well, identify what you think they got as
19 well as what you have so that they know that they got it, I
20 guess is -- so there's nothing else.
21 MR. CHMELAR: Right.
22 MS. GIACCHETTI: I understand that, Judge.
23 THE COURT: And you'll do that within a week or so?
24 MS. GIACCHETTI: Yes, Judge.
25 MR. CHMELAR: I don't think Ms. Giacchetti -- well, I

1  don't think you're simply saying everything would constitute
2  compliance with the rule, but we can -- I'll cover that with
3  Ms. Giacchetti, and if it requires, we'll come back before the
4  court.
5           THE COURT:  Fine.
6           MR. CHMELAR:  Do we have another status hearing, your
7  Honor?
8           THE COURT:  Let's see.  How soon do you want another
9  one; two weeks, three weeks?
10          MS. GIACCHETTI:  The Santiago is due the 17th.
11          MR. CHMELAR:  We can do it after --
12          MS. GIACCHETTI:  Judge, I think we're going to see
13 Santiago and 404(b)(6) on the 17th of July, so perhaps
14 something after that date.
15          THE COURT:  All right.
16          THE CLERK:  July 21.
17          THE COURT:  July 21 at 9:00.  And obviously, if you
18 have problems, you can always bring them before me before
19 that.
20          MR. CHMELAR:  Thank you, Judge.
21          MS. GIACCHETTI:  Thank you, Judge.
22          THE COURT:  All right.  Thank you.  I think -- did we
23 exclude time?
24          MS. GIACCHETTI:  Yes, Judge.  We agreed to exclude
25 time.

```
1              THE COURT:  Through the trial?
2              MR. CHMELAR:  We did.  We excluded from the
3   arraignment through the trial date.
4              THE COURT:  All right.  Thank you.
5      (Proceedings adjourned at 9:22 a.m.)
6                        * * * * * * *
7                       C E R T I F I C A T E
8         I, Judith A. Walsh, do hereby certify that the
9   foregoing is a complete, true, and accurate transcript of the
10  proceedings had in the above-entitled case before the
11  Honorable HARRY D. LEINENWEBER, one of the judges of said
12  Court, at Chicago, Illinois, on June 30, 2015.
13
14  /s/ Judith A. Walsh, CSR, RDR, CRR          July 7, 2015
15  Official Court Reporter
16  United States District Court
17  Northern District of Illinois
18  Eastern Division
```